Fry, J.
delivered the opinion of a majority of the Court.
The prisoner was indicted, on various counts, in the Circuit Superior Court of Henrico, for rebellion, with intent to kill and murder, committed in the penitentiary; he being, at the time, confined therein as a felon.
He was found guilty on each count, and sentence of death passed upon him.
His offence is defined by the act passed February 3, 1844; and the proceedings against him were had according to-the 3d section of the last mentioned act, and ■§> 57, 58, 59, 60, and 61 of the penitentiary act, 1 Rev. Code 630.
At the trial, a witness was admitted to give evidence for the Commonwealth, who was a convict for felony, unpardoned, and still undergoing his punishment in the penitentiary. To the admission of this witness, the prisoner excepted; and the question before us is, did the Court below err in receiving him as a witness ?
By the act of assembly, 1 Rev. Code, § 1, p. 547, it is enacted, “ That no person convicted of treason, murder or other felony whatsoever, shall be admitted as a witness in any case whatsoever, unless he be first pardoned, or shall have received such punishment, as by law ought to be inflicted upon such conviction.” This enactment must control our decision, unless there is some other statute which repeals or modifies it.
Such statute, it is alleged by the Commonwealth, is found in the 58th section, 1 Rev. Code 630, one of those already referred to, prescribing the mode of proceeding against convicts, for crimes committed in the penitentiary. It is as follows: “ To bring the person or persons charged with any of the said offences, before the said Court for trial, the Judge shall issue his warrant, *583 under his hand and seal, to the keeper of the jail and penitentiary, directing him to bring such person or persons before the said Court, as well as any other person or persons confined therein, who may be witnesses either for the Commonwealth, or for the party charged, which warrant the said keeper shall obey.”
The foregoing relates to a special term of the Court. The 60th section gives the same powers to “ any stated term of the Court, to hear and determine such offences ; and the same power to bring the offenders and witnesses into Court, as is given to the special Court hereby authorized ; and the same persons shall ho competent witnesses in each Court.”
Do these sections repeal or modify the first section of the act?
We are required to arrive at the true meaning of the Legislature, if we can: and, to that end, should put a reasonable, construction upon their language. We must look to the words they have used; and to tho subject matter to which they relate. They refer to a community of felons or outlaws; to the inmates of a great prison, cut off from the rest of society; and to their attempts to rebel, and to escape, or to wound or kill their keepers. From the place, and the character, of the crimes contemplated, there could be no witnesses to them expected, but the officers of the penitentiary and their prisoners. When, then, the Legislature directs the Judge to require the keeper to bring the prisoner before him, “ as well as any other person or persons confined therein, who may bo witnesses, either for the Commonwealth or the party charged,” did they mean merely to prescribe a special habeas corpus ad testificandum, the manner, only, of conventing the witnesses, or did they intend to enable a class of persons to be witnesses, pro hac vice, who under other circumstances are disqualified ? The language of the first clause, does not, in its more obvious sense, seem to repeal the previous law; or to do more than to prescribe the manner of bringing up *584 the witnesses. It does not seem to enact or declare a competency which did not before exist; but to leave the question of who were, or were not, lawful witnesses, to be adjudged by the existing law. To construe the words, too, as enabling or creative, as they would seem to embrace all “ persons confined therein,” might require us to infer that even the disability of perjury, of colour, of slavery, and the relation of husband and wife, was designed to be disregarded. From the difficulties, and consequences of this construction, a majority of the Court, if the first clause stood alone, were of opinion that they ought not to construe it, as creative or enabling. But, taking it in connection with the 60th section, before quoted, a majority of the Court are of opinion that it does create or enable a new class of witnesses. The material words of this section are, after giving the same mode of bringing up the witnesses, “and the same persons shall be competent witnesses in each Court.” They shew that the competency of the witnesses was in the mind of the Legislature, as well as the manner of convening them. And when we see that they had this competency in view; that it was not necessary to confer a power upon the Court to convene witnesses, which the common law before conferred ; when we advert to the place, and character of the crimes provided for; and the situation and connexions of the offenders; giving that reasonable construction before adverted to, to the words of the law, and duly regarding the apparent occasion and object of the enactment, we conclude that the witness objected to was competent; and that the Court below did not err in admitting him. Whether all the disabilities of witnesses, as before intimated', are abolished by this construction; whether crime, in the view of the Legislature, has made all equal; and, with the rights and duties, suspended, also, the immunities of the married state, we do not decide. We leave any such question to be decided, when it shall occur.
*585 Johnston, J.
Differing as I do with a majority of my brethren, upon the proper construction of the law which is applicable to this case, I deem it due to myself to state the reasons of the opinion I entertain.
There is but a single point presented for our consideration by the record before us, and that is, did the Judge below err in admitting the testimony of convicts in the penitentiary against the prisoner, who himself was also a convict, at the time of his trial, as well as at the time the crime was committed ?
The proper determination of this question depends upon the construction of the 58th section of the act passed March 6th, 1819, 1 Rev. Code 630, by which it is made the duty of the Judge when a crime is committed in the penitentiary, to issue his warrant to the keeper, commanding him to bring before him the person accused, together with any other person or persons confined therein, “ who may be witnesses either for the Commonwealth or for the party charged.” The object of this provision, let it be borne in mind, was to provide for the punishment of offences committed by those who were confined in the penitentiary. Now, how could this be done ? As the law stood, every convict sent to the penitentiary for felony, was disabled from being a witness until he had served out the time of his confinement, or had been pardoned. There was then but one practicable mode, and that was to declare that these disabled convicts might be competent witnesses for or against the Commonwealth, on the trial of any one of their fellows, for a crime committed in the penitentiary. And this, it seems to me, is just what the Legislature intended to do by the provision contained in the section under consideration. After directing the Judge to issue his warrant to the keeper, commanding him to bring the accused and any other person confined in the penitentiary before the proper authorities, the Legislature, knowing this would be a vain thing unless the disabi *586 lity were removed from the convicts, whose testimony might be needed, added the provision contained in the sentence, “ who may be witnesses” either for the Cornmonwealth or the accused; and thus declaring them to be competent to testify. Is not this the natural and obvious construction of the section ? Is it not the only one that will secure the object in view, when the enactment was made, to wit: the trial and conviction of offenders in the penitentiary ? It seems to me that it is, and that any other construction will not only defeat that object, but convict the Legislature of gross ignorance or gross neglect of duty. This I am not willing to do, unless driven to it by imperious necessity—a necessity which does not exist, as it seems to me, in the present instance. It is true, the language employed in the section under consideration, is not free from obscurity. But then we must not permit ourselves to be embarrassed by a criticism upon the language employed by the Legislature. Many of our laws are awkwardly expressed. But this is no valid objection to their execution, provided we are enabled to discover the object and intent of the Legislature in their enactment. When we can do that, all minor difficulties must be thrown aside, and such a construction given to the law, as will carry out its object and intent, that is, if the language used by the Legislature is broad enough to admit of such construction. I admit we have no right to make a law, even to carry out an obvious intent. But if the words used will bear a construction consistent with the intent of the Legislature, and at the same time admit of a construction that would defeat that object, then by every just rule of construction, we are bound to adopt the former. In this case the language used is broad enough, it seems to me, to admit of such construction. The expression “ who may be witnesses,” I regard as tantamount to “ who shall be witnesses,” that is, who shall be competent witnesses.
*587 By this construction the great object of the law is accomplished. By any other, it seems to me to be defeated; and there is no law upon our statute book by which crimes committed in the penitentiary can be punished, even if those confined therein Avere to rise up and murder the keeper and every guard placed over them.
That such is the state of our criminal law I cannot bring myself to believe with the enactment contained in the 58th section before me.
As to the objection that this construction would admit all persons confined in the penitentiary as witnesses, including free negroes and slaves, if any such were there, I think it more specious than substantial. Although the words used are comprehensive, and although there is no express exclusion of coloured persons, yet it cannot be supposed the Legislature intended to put them upon a footing Avith white persons in giving testimony in any case.
The view I have taken of the 58th section is strengthened by the 60th section, which declares that the Superior Court of Henrico, at any stated term, shall have the same authority to hear such offences, and to bring the offenders and witnesses into Court, as is given to the special Court; and the same persons shall be competent witnesses in each Court. This shews that the competency of the witnesses was in the mind of the Legislature, and that the words “ may be witnessesin the 58th section, were intended to declare the competency of such witnesses.
Baker, Wilson and Taliaferro, concurred with Johnston, J.
Judges Field, Brown, Clopton and Christian, dissented.
Writ of error refused.